# IN THE COURT OF APPEALS OF IOWA

No. 17-0622
Filed October 10, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JUSTIN ANDRE BAKER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Justin Baker appeals his convictions and sentences for multiple offenses.
**AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., Tabor, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**VOGEL, Presiding Judge.**

Justin Baker appeals his convictions and sentences for possession with intent to deliver marijuana, failure to affix a drug tax stamp, driving while barred (two counts), and possession of marijuana, second offense.[1] He argues the district court erred in denying his motion to suppress, his counsel was ineffective for failing to file another motion to suppress, and the district court abused its discretion in imposing his sentence. We find the court properly denied the motion to suppress, he has not shown prejudice resulted from his counsel's failure to file a second motion, and the court adequately explained its reasoning for imposing his sentence. Accordingly, we affirm.

## I. Background Facts and Proceedings

On August 30, 2015, Investigator Michael Girsch with the Waterloo Police Department[2] received a call from a law enforcement official in the state of Nevada. The official told Investigator Girsch they had stopped a vehicle containing three persons from Waterloo, including Baker. Nevada officials arrested all three persons after finding a distributional quantity of marijuana and other items in the vehicle. Investigator Girsch testified Baker was "on our radar" after he received the call. Nevada officials never charged Baker after his arrest.

In early April 2016, Investigator Girsch was conducting surveillance on an unrelated matter in plain clothes near Ricker Street in Waterloo. He noticed Baker

---

[1] As will be explained later in the opinion, these charges were docketed under three separate case numbers: FECR 213018, possession with intent to deliver marijuana, and failure to affix a drug tax stamp; AGCR 212970, driving while barred, and possession of marijuana, second offense; and AGCR 215793, driving while barred.

[2] Investigator Girsch testified he began working for the Waterloo Police Department in 2008 and he joined the area Drug Enforcement Task Force about three-and-one-half years prior to trial.

driving a vehicle and apparently preparing to pull into the driveway at a house. Baker then appeared to notice the investigator, and he continued driving past the house. Investigator Girsch testified he "stuck out in that neighborhood" despite wearing plain clothes and "it doesn't take a rocket scientist to figure out who a cop is in certain neighborhoods." Investigator Girsch circled the block and set up in a different location. He eventually observed Baker drive toward the house again, park in its driveway, and enter the house.

On April 18, 2016, Investigator Matthew Isley with the Black Hawk County Sheriff's Office[3] received an anonymous call regarding Baker and his niece Shana Caldwell. The caller said Baker and Caldwell were living in the Ricker Street house that Investigator Girsch previously saw Baker enter. The caller also said the house contained a lot of marijuana and the two had just returned from out of town with a shipment of more marijuana.

After receiving the anonymous call, Investigator Isley began watching the Ricker Street house. He saw Baker enter the house, exit about twenty minutes later, and drive away. Investigator Isley followed Baker's vehicle. He soon observed Baker's vehicle stop in an alley, where another man put his hand in the vehicle's open passenger window and then immediately removed his hand and put it in his pocket. Investigator Isley testified he sees hand-to-hand narcotics transactions "almost daily" in his line of work and the events in the alley were consistent with a hand-to-hand narcotics transaction.

---

[3] Investigator Isley testified he attended the Iowa Law Enforcement Academy in 2003, and he subsequently worked in the jail and as a road deputy before joining the area Drug Enforcement Task Force two-and-one-half years prior to trial.

Investigator Isley then asked for a police officer to stop Baker's vehicle as part of their investigation into illegal narcotics activity. Sergeant Steven Bose with the Waterloo Police Department responded, identified Baker's vehicle, and activated his emergency lights. With the emergency lights directed at him, Baker continued to slowly drive for about one half-block, turned onto another street, and slowly drove for about another quarter-block before stopping. When Baker's vehicle turned, Sergeant Bose saw an object thrown out the driver's window. Once stopped, Sergeant Bose placed Baker in handcuffs and recovered the thrown object, which he determined was a small bag of marijuana. Baker had $200 in twenty-dollar bills in his pocket, but officials found nothing else significant on his person or in the vehicle.

Investigator Girsch testified they decided to apply for a search warrant for the Ricker Street house after the traffic stop. He testified he was concerned Baker had alerted someone at the house to destroy evidence while he continued driving a "slow roll" before eventually stopping his vehicle. According to Investigator Girsch, oftentimes when law enforcement stops a drug offender's vehicle, "if they have a stash house or something like that, they will slow roll and try to get a text or call off for people to get rid of that evidence in that residence." Before writing the search warrant application, officials performed a protective sweep of the house looking for weapons and persons. During the sweep, officials saw a digital scale and a bag of marijuana in plain sight, and they noted the odor of fresh marijuana throughout the home. After the sweep, Investigator Isley wrote and submitted the application for the search warrant. The application included a five-page affidavit setting forth supporting facts, including the Nevada arrest, Investigator Girsch's

observation of Baker's hesitation and avoidance behavior before entering the Ricker Street house, the anonymous call, the suspected hand-to-hand narcotics transaction, the bag of marijuana thrown during the traffic stop, and observations made during the sweep. The district court issued the search warrant later that day. Items found during the search included a digital scale, multiple bags of marijuana, miscellaneous packaging including both new and used empty small plastic bags, and various items containing marijuana residue.

On May 17, 2016, the State filed a trial information charging Baker with possession of a controlled substance—marijuana, second offense and driving while barred as a habitual offender. *See* Iowa Code §§ 124.401(5), 321.561 (2016). The charges were filed in case number AGCR212970. On May 18, the State filed a second trial information charging Baker and Caldwell with possession of a controlled substance with intent to deliver and a drug tax stamp violation. *See id.* §§ 124.401(1)(d), 453B.12. The charges against Baker were filed in case number FECR213018. On November 2, the State filed a third trial information charging Baker with driving while barred as a habitual offender, related to his actions on September 28, in case number AGCR215793.

On August 9, 2016, Baker filed a motion to suppress evidence for case number FECR213018, and he moved to join a similar motion filed by Caldwell. On September 12, the district court held a hearing on the motions. At the hearing, the parties clarified the motions challenged the bases for the stop of Baker's vehicle, the protective sweep of the house, and the warrant to search the house.

On September 23, 2016, the district court issued its ruling on the motions to suppress. First, the court considered the basis for the investigatory traffic stop:

Under a totality of the circumstances view, the Court finds the stop of Baker's vehicle was supported by a reasonable suspicion of criminal activity. At the time of the stop, officers had received the anonymous tip indicating Baker and Caldwell recently received a "distributional amount" of narcotics through an anonymous tip as well as prior notification by Nevada law enforcement Baker had been arrested for possession of a large quantity of marijuana. This information, in addition to Investigator Isley's observation of what he believed to be a hand-to-hand narcotics transaction, provided sufficient facts to alert experienced officers to a reasonable suspicion of criminal activity, namely the sale or distribution of narcotics. The suspicion of criminal activity was confirmed when Baker attempted to dispose of marijuana before stopping his vehicle. Given the Court's finding the stop was reasonable any suppression issues related to the stop are denied.

Second, the court found no exigent circumstances to support the protective sweep, and it suppressed evidence obtained in the sweep. Third, the court considered the basis for the search warrant of the house. Because the court suppressed evidence from the protective sweep, the court excised this evidence from the warrant application; however, the excised information only amounted to three paragraphs of the five-page affidavit. The remaining information in the application included Baker's arrest in Nevada, his hesitation to enter the house while Investigator Girsch watched him, the suspected hand-to-hand narcotics transaction, and the bag of marijuana Baker tossed out the car window. The court rejected the argument that the warrant application contained falsities because it failed to mention Baker was not charged by Nevada officials and Investigator Girsch wore plain clothes when he saw Baker hesitate to enter the house. Accordingly, the court found probable cause to support the warrant application, and it denied suppression issues related to the warrant and ensuing search.

On January 24, 2017, Baker and Caldwell proceeded to a jury trial on case number FECR213018. The jury found both defendants guilty of possession of

marijuana with intent to deliver and a drug tax stamp violation. On April 17, Baker pled guilty to possession of a controlled substance—marijuana, second offense, and two counts of driving while barred as a habitual offender from the other two proceedings. Also on April 17, the court entered judgment and sentence for each of the three proceedings. In addition to imposing and suspending fines and surcharges, the court imposed the following terms of incarceration: five years for possession of marijuana with intent to deliver, five years for the drug tax stamp violation, one year for possession of a controlled substance—marijuana, second offense, and one year for each of the two counts of driving while barred. All terms of incarceration were to be served concurrently.

Baker now appeals. He argues the district court erred in denying his motion to suppress, his counsel was ineffective for failing to file a motion to suppress in case number AGCR212970, and the court abused its discretion in imposing his sentences.

### II.    Standard of Review

"We review the denial of a motion to suppress on constitutional grounds de novo." *State v. Ingram*, 914 N.W.2d 794, 798 (Iowa 2018). "We review claims of ineffective assistance of counsel de novo." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). When a sentence is within the statutory limits, we review challenges to the sentence for abuse of discretion. *State v. Seats*, 865 N.W.2d 545, 552 (Iowa 2015).

### III.    Motion to Suppress

Baker argues the district court erred in denying the motion to suppress evidence from both the investigatory stop and the search of the Ricker Street

house. Specifically, he argues the investigatory stop was not supported by reasonable suspicion, and the search warrant for the house was not supported by probable cause. Baker raises his arguments under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.

### A. Investigatory stop

Law enforcement stopped Baker's vehicle in order to investigate ongoing illegal narcotics activity. An officer may make a warrantless stop of "an individual or vehicle for investigatory purposes based on a reasonable suspicion that a criminal act has occurred or is occurring." *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002); *see also Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). "Our decisions have universally held that the purpose of a *Terry* stop is to investigate crime." *State v. Tyler*, 830 N.W.2d 288, 293 (Iowa 2013); *see also State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010) ("The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot."). "To justify an investigatory stop, the officer must be able to point to 'specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Kreps*, 650 N.W.2d at 641 (quoting *State v. Heminover*, 619 N.W.2d 353, 357 (Iowa 2000)). "The circumstances under which the officer acted must be viewed 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Id.* at 642 (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976)). "Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made." *Id.*

The parties disagree about the time to determine whether reasonable suspicion existed. The State asserts the reasonable-suspicion determination includes everything the officials knew at the time Baker fully acquiesced to authority by stopping his vehicle; accordingly, his actions in throwing a bag of marijuana out of his vehicle while slowly coming to a stop after Sergeant Bose activated his emergency lights contribute toward reasonable suspicion for the investigatory stop. However, our supreme court has declared the reasonable suspicion determination for an investigatory traffic stop includes "all information available to the officer *at the time the officer makes the decision to stop the vehicle*." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004) (emphasis added). At the time Sergeant Bose activated his emergency lights, law enforcement officials had already made the decision to stop Baker's vehicle. *See id.* Therefore, we cannot consider Baker's actions after activation of the emergency lights, including him throwing a bag of marijuana out the window while he slowly stopped, in determining whether reasonable suspicion existed.

Before the stop of Baker's vehicle, Investigator Isley believed he had engaged in criminal activity, specifically the possession of marijuana with intent to deliver, which is a felony. *See* Iowa Code § 124.401(1)(d). Investigator Isley decided to stop Baker after he witnessed a suspected hand-to-hand narcotics transaction. He knew several facts at the time he made this decision: (1) Baker's actions were consistent with the hand-to-hand narcotics transactions he knew from personal experience and training; (2) an anonymous caller reported Baker had just returned from out of town with a large shipment of marijuana and there was a large quantity of marijuana in the Ricker Street house; (3) Baker left the Ricker Street

house immediately before the suspected hand-to-hand narcotics transaction; (4) Investigator Girsch recently witnessed Baker hesitating then attempting to avoid being seen entering the house; and (5) Baker was arrested in Nevada several months prior when officials there found him and a large quantity of marijuana in the same vehicle. As someone with more than ten years of law enforcement experience, including more than two years serving on the area Drug Enforcement Task Force, Investigator Isley knew these facts were indicative of illegal narcotics activity. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (stating a totality-of-the-circumstances review may consider the officers' "experience and specialized training to make inferences from and deductions about the cumulative information available to them"); *see also State v. Pals*, 805 N.W.2d 767, 774 (Iowa 2011) ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." (quoting *United States v. Hensley*, 469 U.S. 221, 229 (1985)). When viewing the totality of the circumstances, we, like the district court, find these facts create more than a mere suspicion of criminal activity. *See Tague*, 676 N.W.2d at 204. Therefore, reasonable suspicion supported the stop of Baker's vehicle, and the district court did not err in denying the suppression of evidence from the stop.

Baker and the dissent argue none of these individual facts create a reasonable suspicion of illegal activity. We agree that none of the facts, standing alone, generates reasonable suspicion justifying an investigatory stop. However, our supreme court has directed us to consider "the totality of the circumstances" when evaluating whether reasonable suspicion exists to justify an investigatory

stop. *Kreps*, 650 N.W.2d at 641–42. Reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* at 642. (quoting *State v. Richardson*, 501 N.W.2d 495, 496–97 (Iowa 1993)). "One of the most common situations in which investigatory stops occur is direct police observation of suspicious conduct." *Id.* at 643. Despite any weakness in any of the facts standing alone, we find the totality of all circumstances when viewed with Investigator Isley's experience in drug enforcement generates reasonable suspicion to justify the investigatory stop of Baker's vehicle. *See State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990) (finding that, although law enforcement lacked probable cause to arrest after witnessing a suspected narcotics transaction, all factors known to the officers created "reasonable and articulable cause for suspicion that criminal activity was taking place" to justify an investigatory stop).

## B. Search warrant

A search warrant must be supported by probable cause. *State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). "Probable cause to search requires a probability determination that '(1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched.'" *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997) (quoting *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995)). "The issuing judge 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information,' probable cause exists." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "In doing so, the judge may rely on 'reasonable, common

sense inferences' from the information presented." *Id.* (quoting *State v. Green*, 540 N.W.2d 649, 655 (Iowa 1995)).

All of the facts providing reasonable suspicion for the stop of Baker's vehicle also support the search warrant. Additionally, because the stop of his vehicle was proper as explained above, his actions in slowly stopping and throwing a bag of marijuana out his vehicle also support the issuance of the search warrant. *See State v. McGrane*, 733 N.W.2d 671, 680 (Iowa 2007) (explaining evidence must be suppressed under the exclusionary rule if the evidence was "discovered as a result of illegal government activity"). These facts provide probable cause to support the search warrant. *See id.*

Baker also argues the search warrant is invalid because its supporting affidavit contains false statements.[4] Specifically, he notes the affidavit mentions the Nevada arrest but does not mention he was never charged or convicted following the arrest, and he notes the affidavit mentions Investigator Girsch observed him hesitate to enter the Ricker Street house but does not mention Girsch wore plain clothes at the time.

To invalidate the affidavit, the defendant must show the affiant included a "deliberate falsehood" or acted with "reckless disregard for the truth." *Groff*, 323

---

[4] In its brief, the State argued Baker waived any argument on the affidavit's validity because he did not follow the proper procedure before the district court. Ordinarily, a defendant must make a preliminary showing of falsity in the affidavit before reaching an evidentiary hearing. *State v. Groff*, 323 N.W.2d 204, 209 (Iowa 1982) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)). While Baker made no such preliminary showing, his co-defendant raised the affidavit's validity and the district court squarely ruled on the issue when denying the motions to suppress. At oral argument, the State acknowledged it never questioned the procedure used to challenge the affidavit's validity before the district court and it had therefore waived any argument Baker failed to follow the proper procedure to challenge the affidavit's validity. *See Groff*, 323 N.W.2d at 209.

N.W.2d at 209 (quoting *Franks*, 438 U.S. at 171–72). "Allegations of negligence or innocent mistake are insufficient." *Id.* (quoting *Franks*, 438 U.S. at 171–72). "A 'false' affidavit statement is one which misleads the magistrate into believing the existence of certain facts which enter into his thought process in evaluating probable cause." *Id.* at 210. Baker does not point to any explicitly incorrect statements in the affidavit; instead, he notes the affidavit does not say he was not charged or convicted following the Nevada arrest and it does not note Investigator Girsch wore plain clothes when he saw Baker hesitate to enter the Ricker Street house. Baker has presented no evidence the affiant, Investigator Isley, deliberately obfuscated by omitting these facts. Nor has Baker shown a reckless disregard for the truth that would mislead a magistrate who is familiar with criminal investigations. The affidavit correctly said Baker was arrested in Nevada, and it was not reckless to not also specify he had not been charged or convicted following the arrest. The affidavit also clearly identified Investigator Girsch as an investigator with the local drug enforcement task force who was conducting an investigation at the time he witnessed Baker hesitate to enter the house. Investigator Girsch testified he was identifiable as law enforcement despite wearing plain clothes and he believed Baker recognized him as such. Accordingly, it was not reckless to not also specify Investigator Baker wore plain clothes. Therefore, the affidavit did not contain false statements. *See id.*

Furthermore, even if the affidavit contains false statements, those falsities invalidate the warrant only if the warrant lacks probable cause without those challenged statements. *Id.* at 209. Setting aside the challenged statements, the warrant is still supported by the anonymous call and the observations of law

enforcement that Baker left the Ricker Street house, engaged in a suspected hand-to-hand narcotics transaction, and tossed a bag of marijuana while slowly coming to a stop after Sergeant Bose activated his emergency lights. These unchallenged statements provide probable cause to support the affidavit.

## IV.    Ineffective Assistance

Baker next argues his counsel was ineffective for failing to file a motion to suppress in case number AGCR212970.[5]  A successful ineffective-assistance-of-counsel claim requires proving "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Clay*, 824 N.W.2d at 495.  Prejudice resulted if, "but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 496.  Baker's counsel filed a motion to suppress in case number FECR213018, and he argues his counsel should have filed the same motion in case number AGCR212970.  As explained above, the court did not err in denying the motion to suppress for FECR213018.  Therefore, he cannot show prejudice resulting from his counsel's failure to file the same motion to suppress for AGCR212970.

## V.    Sentencing

Finally, Baker argues the district court abused its discretion in imposing his sentence because the court did not fully explain its reasons for the sentence.  When imposing a sentence, the district court must provide "a statement of reasons on the record." *State v. Thacker*, 862 N.W.2d 402, 408.  "[A] 'terse and succinct'

---

[5] Baker was initially assisted by separate counsel in FECR213018 and AGCR212970.  After his motion to suppress was denied, counsel in FECR213018 took over the representation of Baker in AGCR212970.  On appeal, Baker does not specify which counsel was ineffective in failing to file a motion to suppress in AGCR212970.

statement may be sufficient, 'so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion.'" *Id.* (quoting *State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989)).  At the sentencing hearing, the district court provided the following explanation to Baker:

> I have chosen to run these matters concurrent because as I said they are serious matters. . . .  They are serious matters no matter how we look at it, but I don't think they're so serious as to warrant a stacking of these matters . . . .  I just don't see it as being that critical.  I have chosen not to go with the recommendation by your attorney to place you at the residential facility because as I have said, you have been to prison once and here it is six years later and you're still doing this.  You're still doing drugs or at least you were doing drugs, so apparently all of the treatment modalities that your attorney pointed out a short while ago didn't work because here you are.

This explanation is adequate for our review.  Baker notes the court did not discuss all of the factors of sentencing.  *See State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002) (stating the factors of sentencing include "the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform").  However, the court is not required to explicitly address every factor.  *See State v. Boltz*, 542 N.W.2d 9, 11 (Iowa 1995) ("[T]he failure to acknowledge a particular sentencing circumstance does not necessarily mean it was not considered.").  We find no abuse of discretion in Baker's sentence.

## VI.    Conclusion

The district court properly denied Baker's motion to suppress, and no prejudice resulted from his counsel's failure to file a similar motion to suppress in

a related proceeding.  Additionally, the district court did not abuse its discretion in imposing his sentence.

**AFFIRMED.**

Carr, S.J., concurs; Tabor, J., dissents.

**TABOR, Judge** (dissenting)

I respectfully dissent. The district court should have granted Baker's motion to suppress evidence found during an investigatory stop of his vehicle and a warranted search of his residence.

Courts review investigatory stops based on the totality of the circumstances. The United States Supreme Court has warned against a "divide-and-conquer analysis" where reviewing courts assign no weight to facts susceptible to innocent explanations when deciding if the police had reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 274 (2002). But here, the problem is not that the officers' articulated facts appear innocuous if considered separately. The State's case is weak because the *combined* circumstances did not generate reasonable suspicion for an investigatory stop. Rather than just discouraging a divide-and-conquer inquiry, the State essentially advances an amass-and-aggrandize approach to the suppression challenge.

To that end, the State alleges reasonable suspicion to stop Baker arose from "five separate incidents":

> 1) a few months before his Iowa arrest, state law enforcement in Nevada reported to the Tri-County Drug Enforcement Task Force that they arrested [Baker] for trafficking marijuana through the state; 2) About two weeks prior to his arrest, [Baker] acted suspiciously and evaded Investigator Girsch when he noticed that Girsch was parked near 702 Ricker Street; 3) an anonymous caller informed the Tri-County Drug Enforcement Task Force that they had recently been inside 702 Ricker Street, stated [Baker] had a lot of marijuana, and believed he was selling it; 4) Investigator Isley witnessed a hand-to-hand drug transaction involving [Baker]; and 5) After Sergeant Bose initiated the traffic stop but before [Baker] acquiesced to the show of authority, [Baker] threw a bag of marijuana out of his car window, which was recovered by Sergeant Bose.

Let's start with the fifth "incident" cited by the State. The majority correctly concludes Officer Bose's assertion Baker threw a baggie of marijuana from the car did not support the reasonable-suspicion calculus. Baker allegedly threw the baggie after the officer signaled him to stop. So we are left with four facts to consider in our calculus.

Turning to the first incident, seven months before the Iowa stop at issue, investigator Michael Girsch received a call from a trooper who arrested Baker following a traffic stop in the state of Nevada. The trooper alleged Baker was one of three occupants in a vehicle transporting "a large distribution quantity of marijuana." According to Girsch, receiving that information put Baker "on our radar." Although the Nevada trooper shared the arrest information with Iowa authorities, for reasons not revealed in our record, Nevada prosecutors did not pursue criminal charges against Baker. Given the staleness of the Nevada information and the unverified aspect of Baker's participation, this incident does nothing more than tag Baker as a person of interest for the drug-enforcement task force to monitor.

The second incident occurred in early April. Driving an unmarked car, Investigator Girsch was conducting surveillance for an unrelated investigation when he noticed Baker

> traveling in the 700 block of Ricker Street. It appeared he was going to pull into a driveway and then observed me sitting, . . . and to me it looked like he saw me and may have gotten scared or something, continued to drive past a residence, which I thought it looked like he was going to pull into.

The State describes Baker's action as "evading" Investigator Girsch. That is an exaggeration. Girsch did not signal Baker to stop. Thirty seconds later, after

Girsch circled the block, he saw Baker pull into the original driveway.  A generous interpretation of Girsch's perception suggests Baker wanted to avoid interaction with an undercover officer.  Even assuming Girsch accurately read Baker's behavior as skittish in early April, that action contributed no significant weight to the investigators' reasonable suspicion—more than a week later—that evidence of a crime could be discovered by stopping Baker's car.

The third incident happened the day of the stop.  At the task force office, Investigator Matt Isley reportedly fielded a telephone call from an anonymous person claiming to have seen a large amount of marijuana inside Baker's residence in the previous few days.  The caller alleged Baker and his niece just "got back into town with a shipment of more marijuana."  In response to the call, Investigator Isley went to surveil the Ricker Street house.  He saw Baker enter and leave about twenty minutes later in a blue Buick.  But Isley did not provide any details corroborating the anonymous tip.   And nobody on the task force knew or tried to find the identity of the caller.

"An anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (noting in some situations a suitably corroborated anonymous tip may exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop" (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990))).  Baker argues no such indicia of reliability appear in his case.  The anonymous caller was reporting criminal behavior concealed from public view.  Neither the State nor the majority even try to distinguish this situation from *J.L*, instead falling back on the totality-of-the-circumstances principle.   The uncorroborated, anonymous tip received by

Investigator Isley is not reliable enough to bolster a reasonable-suspicion finding, even viewed along with the other evidence.

The fourth incident quickly followed the initial surveillance. Investigators Girsch and Isley tailed Baker in separate unmarked cars. Girsch saw Baker turn into an alley. Girsch testified:

> As I passed by the alley I glanced over, saw the Buick stopped talking to one or two individuals in the alley. I continued past and then Investigator Isley was probably right behind me or close to and he soon radioed that he observed a hand-to-hand transaction with the subject driving the blue Buick and then the people standing outside the vehicle.

Investigator Isley testified that as he was driving by he could see "a black male stick his, I believe it would have been his right hand into the passenger window and immediately pull it back out and stick it into his right pocket."

At the suppression hearing, the prosecutor asked Investigator Isley if what he saw was consistent with a "hand-to-hand narcotics transaction." Isley answered "yes." He testified in his line of work he saw narcotics transactions occur hand to hand "multiple times a day." Or depending on what the task-force officers are doing—"almost daily probably." On cross examination, Isley acknowledged he could not see any object—neither drugs nor cash—change hands. Isley agreed it could have "quite possibly" been just a handshake.

The majority credits Investigator Isley's experience in witnessing hand-to-hand narcotics transactions as the lynchpin for upholding the investigatory stop. But as the saying goes, "it is tempting, if the only tool you have is a hammer, to

treat everything as if it were a nail."[6]  In the seconds Isley had to glance down the alley as he drove by, he did not actually see a hand-to-hand exchange.  Isley asserts someone reached into the passenger window of Baker's car and then placed his hand in his pocket.  Isley assumed he witnessed a drug exchange because he alleges he sees such interactions "almost daily" or even "multiple times a day."

The investigators did not testify the alley was a known drug-trafficking area.  And even if they had, "[t]he fact that an exchange of an item occurs in a drug-prone location and that it is observed by an experienced narcotics officer does not, without more, give rise to probable cause or reasonable suspicion."  *People v. Reeves*, No. 2015BX025259, 2018 WL 560239, at *3 (N.Y. Crim. Ct. Jan. 26, 2018); *see also People v. Ocampo*, 879 N.E.2d 353, 363–64 (Ill. App. 2d Dist. 2007) (holding defendant's observed actions, including taking something from his pocket during short conversation with driver, "even when taken together, are simply far too common, without more, to give rise to a reasonable suspicion versus only a hunch of criminal activity").  The State relies on *State v. Roberts*, No. 09-0590, 2010 WL 1050078, at *4 (Iowa Ct. App. Mar. 24, 2010), where our court said it was "not of consequence" that a detective "did not see drugs as a part of the hand to hand exchange."  But *Roberts* involved a controlled drug buy just before the hand-to-hand exchange.  *See id.*  No similar facts accompanied Baker's encounter in the alley.

---

[6] This quote is originally attributed to Abraham Maslow, *Toward a Psychology of Being* (1968).

After Baker left the alley, the task-force investigators arranged for a uniformed officer to pull him over. Officer Bose stopped Baker based on the four incidents outlined above. Even amassed and aggrandized, those circumstances are too unsubstantiated to provide reasonable suspicion to believe evidence of criminal activity could be found on Baker or in his Buick at the time of the stop. Granted, reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). But police officers must be able to point to "specific and articulable facts" measured against an objective standard to justify their "particular intrusion" upon a citizen. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). In other words, we ask if the facts available to the officer at the moment of seizure would warrant a reasonably cautious person to believe the officer took appropriate action.

In Baker's case, a reasonably cautious person would have expected investigators to justify their seizure of Baker with more confirmed suspicions. The investigators based their stop on (1) a seven-month old phone call from Nevada, (2) a week-old, perceived, momentary avoidance of an undercover officer, (3) an anonymous call—unrelated to any surrounding circumstances, and lacking any corroboration, and (4) an alleged "hand-to-hand" transaction where the officer could see neither objects nor hands. Even packaged together, these four facts do not rise to reasonable suspicion.

Consideration of the totality of the circumstances allows courts to view seemingly innocuous facts in light of surrounding circumstances, allowing insight into why a fact may not be so innocuous after all. For example—a parked car may,

at first glance, seem innocuous. But the totality of the circumstances may illuminate the reasonable suspicion: the parked car was in a non-residential area with no legitimate attractions at 12:40 a.m., a time when all surrounding businesses were closed, in an area previously burglarized on several occasions—and just when the officer begins approaching the car, the parked car pulls away. *See State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993). While any one of those facts alone seems harmless, viewed together, they give rise to a reasonable suspicion criminal activity is afoot. *See id.* Courts may consider the totality of the circumstances to reach the sum of reasonable suspicion. But here, the separate facts contribute nothing to the whole. We cannot consider the totality of the circumstances when the total is zero.

Even if we could assume reasonable suspicion existed that Baker was involved in drug dealing, the State did not establish the purpose of stopping his car. Investigatory stops allow law enforcement to resolve ambiguities regarding potential criminal activity. *State v. Tyler*, 830 N.W.2d 288, 298 (Iowa 2013) (quoting 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 9.3(a) (5th ed. 2012)). "If reasonable suspicion exists, but a stop cannot further the purpose behind allowing the stop, the investigative goal as it were, it cannot be a valid stop." *Id.* (quoting *LaFave*, *supra*, at § 9.3(a)). Here we must ask: what ambiguity did Officer Bose aim to resolve in stopping Baker? If Investigator Isley believed he witnessed a "hand-to-hand" drug transaction in the alley, what did he hope to learn from a limited seizure of Baker based on reasonable suspicion? The anonymous tipster alleged Baker had drugs in his home but spoke nothing of his vehicle. So even if credible, the tip did not illuminate

expected fruits of the investigatory stop. Officers did not surveil Baker's residence long enough to detect any pattern of activity. Additionally, if investigators believed Baker distributed marijuana to a buyer during the "hand-to-hand" transaction—without information suggesting Baker possessed more drugs in his vehicle and intended to conduct more drug deals—an investigatory stop served no purpose, and thus cannot be valid under the Fourth Amendment or article I, section 8.

Because the investigatory stop was unsupported by reasonable suspicion and not conducted for a legitimate purpose, any evidence Baker allegedly discarded marijuana was a fruit of the illegal stop and unavailable for the search warrant application. *See State v. McGrane*, 733 N.W.2d 671, 681 (Iowa 2007). Without that evidence, the State lacked probable cause for the search warrant. The remaining information in the warrant application did not rise to the level of probable cause to search. The district court should have granted the motion to suppress.